IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SAMUEL CALLOWAY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 5:22-CV-162 (CAR) |
| v. | : | |
| | : | |
| RITE WAY ANIMAL REMOVAL, | : | |
| LLC, and OMAR HASSAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Samuel Calloway brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, alleging Defendants Rite Way Animal Removal, LLC ("Rite Way") and Omar Hassan failed to compensate him for overtime hours worked. Before the Court is Plaintiff's Motion for Summary Judgment. Having read and considered the Motion, the record in this case, the applicable law, and the parties' arguments, the Court **HEREBY GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment [Doc. 36]. Specifically, the Court **GRANTS** summary judgment for Plaintiff on the issue of Plaintiff's individual coverage under FLSA; Plaintiff's status as an employee; Hassan's individual liability for Rite Way's FLSA violations; and Plaintiff's right to liquidated damages, dependent upon the jury's determination of any overtime hours worked; and **DENIES** summary judgment for

Plaintiff on the issue of the number of hours he worked at Rite Way.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[3] *See id.* at 249–52.

[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

and present specific evidence showing that there is a genuine issue of material fact.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

## BACKGROUND

Defendant Rite Way is a "humane wildlife removal company" owned and operated by Defendant Omar Hassan.[8] Rite Way employed Plaintiff as an "Inspector and Tech" whose responsibilities included setting and checking animal traps, closing off the animals' entrances, inspecting the site, and providing price estimates to customers.[9] Plaintiff worked for Rite Way from April 2021, until he resigned in February 2022.[10] Plaintiff contends Rite Way failed to properly pay him overtime compensation. Defendants contend Plaintiff did not work overtime, except perhaps on one or two occasions.[11] The facts, taken in the light most favorable to Rite Way and Hassan as the nonmoving parties are as follows:

For the first five months of Plaintiff's employment, from April to October 2021, Rite Way classified Plaintiff an independent contractor, and the last five months, Rite Way classified him as a full-time employee.[12] Hassan did not recall researching whether

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324–26.
[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[8] Deposition of Omar Hassan [Doc. 41-3 at 26, 28.].
[9] *Id.* at 20–21.
[10] Plaintiff's Complaint [Doc. 1 ¶ 18]; Defendants' Answer [Doc. 18 ¶ 18].
[11] Doc. 41-3 at 125–127.
[12] *Id.* at 39–40.

Plaintiff should be classified as an independent contractor or an employee.[13]

In the first few weeks Plaintiff worked for Rite Way, he and Hassan had a "very weird verbal agreeance" whereby Plaintiff was not paid hourly or a salary but was hired as a "1099 and [they] agreed on a certain pay."[14] Under the initial agreement, Plaintiff was paid the same amount no matter how much or little he worked.[15] But when Plaintiff became a salaried employee in October 2021, he was paid a flat rate of $1,280 biweekly plus a commission based on services he sold.[16] The commission was originally 5% and grew to 10%.[17] Hassan testified that Rite Way does not pay overtime because the workers do not work overtime.[18]

Rite Way did not maintain any type of traditional time logs for the hours Plaintiff worked; instead, Plaintiff's hours were reflected on Rite Way's Google calendar and in Hassan's text messages, as Plaintiff would text him "[e]very morning when he left the house . . . . and whenever he got off."[19] Hassan said Plaintiff's hours were 8am to 5pm, but he also admitted Plaintiff worked outside those hours on multiple occasions.[20] When asked to clarify exactly when Plaintiff would have begun work on a specific date based

---

[13] *Id.* at 40–41.

[14] *Id.* at 75.

[15] *Id.* at 75.

[16] *Id.* at 57, 58, 62, 90–91, 143.

[17] *Id.* at 143.

[18] *Id.* at 126.

[19] *Id.*at 66–67, 71, 147, 160, 186.

[20] *Id.* at 151–159

on the text messages, Hassan stated it would have been around 8am "[b]ecause that's his time when he's supposed to start work."[21] Hassan stated Plaintiff never worked overtime, but he also said he worked overtime a couple times on a job in North Carolina.[22]

Hassan controlled the day-to-day operations of Rite Way.[23] Hassan trained the employees on how to do their job and would go back and show them if they had done something incorrectly.[24] Materials needed for the work were purchased via Rite Way's accounts with Home Depot and Division 7 Supply, and anything Plaintiff paid for out of pocket, like gas, was reimbursed.[25] Plaintiff signed a non-compete agreement under which he could not own his own business during his employment with Rite Way[26] or work for any animal removal companies within a 300-mile radius of their Warner Robins location for two years.[27]

## DISCUSSION

Plaintiff argues Defendants failed to pay him overtime compensation in violation of the FLSA and now seeks summary judgment. The Court first addresses Plaintiff's coverage under FLSA, his status as an employee of Rite Way, and Hassan's individual liability under FLSA. The Court then addresses the number of hours Plaintiff worked and

---

[21] *Id.* at 156.

[22] *Id.* at 127.

[23] *Id.* at 44.

[24] *Id.* at 45–46.

[25] *Id.* at 22–23, 44, 100.

[26] *Id.* at 46. Defendants could not locate a signed copy of the agreement. Doc. 41-3 at 33, 46.

[27] *Id.* at 107–08.

his entitlement to liquidated damages.

## I.    Plaintiff Is Covered Under FLSA

Under the FLSA, "an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage."[28] An employee who was "engaged in commerce or in the production of goods for commerce" is subject to individual coverage.[29] The parties have stipulated that "Plaintiff was engaged in interstate commerce during each and every week of his employment at Rite Way."[30] Therefore, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to Plaintiff's coverage under the FLSA.

## II.    Plaintiff Was an Employee

Plaintiff argues that even though Rite Way classified him as an independent contractor for his first six months of employment, he was in fact a covered employee for his entire employment.[31]

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that

---

[28] *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

[29] *Martinez v. Palace*, 414 F. App'x 243, 245 (11th Cir. 2011) (quoting 29 U.S.C. § 207(a)(1)).

[30] Doc. 36 at 7; Doc. 36-4 at 1.

[31] Defendants failed to respond to this argument in their Response but based on Defendants' Response to Plaintiff's Statement of Undisputed Material Facts and Hassan's Deposition, the Court assumes this is disputed.

relationship demonstrates dependence."[32] "When the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act."[33]

Courts apply various factors to determine the "economic reality" of the parties, including:

(1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) Whether the service rendered requires a special skill;

(5) The degree of permanency and duration of the working relationship;

(6) The extent to which the service rendered is an integral part of the alleged employer's business.[34]

"While these factors serve as guides, the overarching focus of the inquiry is economic dependence . . . . Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'"[35]

---

[32] *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

[33] *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) (citations omitted).

[34] *Scantland*, 721 F.3d at 1311–1312; see also *Taylor v. Walker's Construction, LLC*, No. 7:21-cv-58, 2022 WL 801498, *2 (M.D. Ga. Mar. 15, 2022); *Cooper v. Parker Promotions, Inc.*, No. 4:17-cv-116, 2019 WL 639016, *4 (M.D. Ga. Feb. 14, 2019).

[35] *Scantland*, 721 F.3d at 1312 (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir. 1975)).

All factors weigh in Plaintiff's favor that he was Defendants' employee, not an independent contractor. First, Rite Way and Hassan clearly controlled the manner in which Plaintiff performed his work as an Inspector and Tech. When Plaintiff first started he underwent "[l]ots of training,"[36] and Hassan expected his employees to complete their duties in the manner in which he had trained them.[37] Plaintiff texted Hassan at nearly every step of the work day—from when he left his house, to arrival at the first job, to when he needed materials for a job, or needed a price quote to give a customer.[38] And Hassan testified that anytime the workers did something incorrectly at a job site, he would "go back and show them how to correctly do it."[39]

Second, Plaintiff's ability to make or lose money was largely not determined by his own managerial skill. Although he earned a 5% to 10% commission based on services sold, his main source of income was a flat rate of pay in the amount of $1,280.[40] Hassan testified that Plaintiff's compensation would not be affected "at all" if Rite Way had a bad year.[41]

Third, Plaintiff made no investment into the equipment or materials required to do his job, nor did he hire any workers to assist him.[42] Rite Way purchased all materials

---

[36] Doc. 41-3 at 39.

[37] *Id.* at 46.

[38] *Id.* at 67, 105–06.

[39] *Id.* at 45.

[40] *Id.* at 44–45, 91.

[41] *Id.* at 44.

[42] *Id.* at 22, 44, 99–100.

needed to complete the job.[43] While Plaintiff occasionally paid out of pocket for gas to refuel the company truck, he was always reimbursed.[44]

Fourth, although Plaintiff initially underwent "[l]ots of training,"[45] Plaintiff was "dependent upon [his employer] to equip [him] with the skills necessary" to work at Rite Way.[46] And while Plaintiff received training to get his license from the Georgia Department of Natural Resources to remove live animals,[47] he worked for Rite Way for months before getting his license.[48] Further, Hassan testified that he had no trouble replacing Plaintiff when he resigned.[49]

Fifth, Plaintiff's position was at-will and relatively permanent.[50] There is no indication in the record that Plaintiff was hired on an ad hoc basis or for a short-term job. From the time he was hired, Defendants paid Plaintiff every week, and Plaintiff had no end date for employment. Moreover, Plaintiff's employment at Rite Way was exclusive.[51] Plaintiff signed a non-compete agreement forbidding him from working for any animal removal companies within a 300-mile radius of Rite Way's Warner Robins location for

---

[43] *Id.* at 22–23.

[44] *Id.* at 100.

[45] *Id.* at 39.

[46] *Scantland*, 721 F.3d at 1318.

[47] Doc. 41-3 at 42–43, 110; Doc. 41-7 at 1.

[48] It is unclear from the record when Plaintiff got his DNR license. He was suspended for three days in August 2021 for removing a live animal without his license, however, text messages show that his test was not scheduled until January 14, 2022.

[49] Doc. 41-3 at 43.

[50] *Id.* at 40.

[51] *Id.* at 46, 91, 92, 103, 107–08; *see Scantland*, 721 F.3d at 1319 ("Exclusivity is relevant [to the degree of permanency and duration of the working relationship.").

two years[52] and from owning his own business while employed by Rite Way.[53]

Finally, Plaintiff's work was integral to Rite Way's business. Rite Way is an animal removal company, and Plaintiff performed the animal removals. Plaintiff's duties included removing and replacing insulation at customers' homes; checking, baiting and resetting traps; closing the animals' entrances to customers' homes; inspecting the area; and selling the job to the customer.[54] These duties go the very heart of Rite Way's business. Thus, when viewing the facts most favorably toward Defendants and with all justifiable inferences drawn in their favor, Plaintiff was an employee under the FLSA. Therefore, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to the issue of Plaintiff's status as an employee under FLSA.

### III.    Defendant Hassan Is Subject to Individual Liability

Under FLSA, an employee has "a private right of action against any 'employer' who violates its minimum-wage or overtime provisions."[55] Employer is broadly defined "to include 'both the employer for whom the employee directly works as well as "any person acting directly or indirectly in the interests of an employer in relation to an employee."'"[56] Therefore, "a corporate officer with operational control of a corporation's

---

[52] Doc. 41-3 at 107–08.

[53] *Id.* at 46.

[54] *Id.* at 19–21.

[55] *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (quoting 29 U.S.C. § 216(b)).

[56] *Id.* (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d))).

covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."[57] "[T]o qualify as an employer under the FLSA, a supervisor 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'"[58]

Plaintiff argues that Hassan qualifies as an employer under the FLSA and is individually liable for any FLSA violations.[59] The Court agrees. As owner-operator and one of only approximately five employees, Hassan not only controlled Rite Way's day-to-day operations, but he also directly supervised Plaintiff and controlled his compensation.[60] Thus, Hassan individually qualifies as an employer, along with Rite Way, and is jointly and severally liable under the FLSA for any unpaid wages. The Court **GRANTS** the Plaintiff's Motion for Summary Judgment as to Defendant Hassan's individual liability under the FLSA.

## IV.    Number of Hours Worked

The FLSA provides that employers generally must pay non-exempt employees overtime pay at one and one-half times the employees' regular rate for over 40 hours worked per week.[61] Under the FLSA, the employee bears "the burden of proving that he

---

[57] *Id.* (quoting *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)).

[58] *Id.* (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 550 F.3d 1150, 1160 (11th Cir. 2008)).

[59] Defendants did not respond to this argument on the merits in their Response, however, in Defendants' previous Motion to Dismiss, they argued Plaintiff had not plausibly alleged Hassan was Plaintiff's employer.

[60] Doc. 36 at 15; Doc. 41-3 at 19, 35.

[61] *See* 29 U.S.C. § 207(a)(1).

performed work for which he was not properly compensated."[62] But when the employer's records are inadequate, "that burden is relaxed."[63]

Plaintiff argues Rite Way's records are inaccurate and inadequate, and therefore Plaintiff's testimony is the best evidence for the true number of hours worked. Defendants argue Plaintiff's testimony consists of conclusory statements with no evidentiary value: He has produced no records and no credible testimony providing information as to the hours he worked while they have produced accurate time records accounting for the hours Plaintiff worked each day. Because genuine issues of material fact exist as to the number of hours Plaintiff worked and the amount, if any, of overtime compensation he is owed this issue must be left to a jury.

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'"[64] The employer has a duty to keep records of an employee's wages and hours because "[t]he employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed."[65]

---

[62] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

[63] *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013).

[64] *Allen v. Board of Public Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[65] *Id.*

"Employees seldom keep records themselves."[66] "[I]n situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[67] The burden then shifts to the employer, and "it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."[68] "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate."[69]

Plaintiff's Declaration, together with Defendant Hassan's own deposition, cast sufficient doubt on Defendants' contention that its records accurately reflect the hours Plaintiff worked in excess of 80 hours per pay period. Plaintiff states that he regularly worked 72 hours per week, often from 7:00am to 7:00pm, Monday through Saturday, without taking a lunch break. Rite Way and Hassan dispute this, but they did not employ any accurate timekeeping system. The Google calendar and text messages insufficiently account for the exact hours Plaintiff worked each day. Hassan repeatedly asserts that

---

[66] *Id.*

[67] *Id.* at 1316. (internal quotation marks and citation omitted).

[68] *Id.*

[69] *Id.* (internal quotation marks and citation omitted).

Plaintiff worked from 8:00am to 5:00pm with a one-hour lunch break, but text messages reflect Plaintiff worked earlier than 8:00am or later than 5:00pm on multiple occasions. Indeed, Hassan admitted in his deposition that he could not determine the exact hours Plaintiff worked on certain dates based on the text messages.[70]  Hassan also admitted Plaintiff worked overtime on at least one job in North Carolina. Finally, the four pages of the Google Calendar Defendants submitted are insufficient records of the hours Plaintiff worked because they reflect (1) only some dates in April, August, September, November, and December of 2021, and (2) when Plaintiff was scheduled to work but not how much time Plaintiff actually spent working.[71]

The Court cannot determine Plaintiff's hours worked or the amount he was paid based on his testimony because the Google calendar and text messages cast doubt on the reasonableness of Plaintiff's Declaration. For example, Plaintiff took four days during the holidays, started late for a haircut, and took four to five days off to volunteer at a high school.[72] Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment in regard to the number of Plaintiff hours worked while employed at Rite Way and leaves that determination to the jury.

---

[70] Doc. 41-3 at 156–160.
[71] Docs. 41-7; 41-8.
[72] Doc. 41-6 at 1, 7, 27.

## V.    Liquidated Damages

"Under the FLSA, liquidated damages are presumptively available."[73] An employer who fails to pay overtime compensation as required by the FLSA is liable to the employee in the amount of the unpaid overtime compensation and "in an additional equal amount as liquidated damages."[74] "But if an employer in an FLSA action shows that 'the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages.'"[75] "The employer has the burden of 'establishing both the subjective and the objective components of that good faith defense against liquidated damages.'"[76]

"[W]here the nonmoving part will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"[77] When a party moves for summary judgment on an issue, he bears the "initial burden of proving the absence of a genuine issue of material fact."[78] The "burden then shifts to the

---

[73] *Gelber v. Akal Security, Inc.*, 14 F.4th 1279, 1288 (11th Cir. 2021).

[74] *Id.* (quoting 29 U.S.C. § 216(b)).

[75] *Id.* (quoting 29 U.S.C. § 260).

[76] *Id.* (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008)).

[77] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[78] *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

nonmoving party, who is required to 'go beyond the pleadings,' to establish that there is a 'genuine issue for trial.'"[79]

Here, Plaintiff argues Hassan cannot establish he or Rite Way complied in good faith with the FLSA because he "conducted no research, inquiry, or any other action to determine Plaintiff's FLSA eligibility prior to and during Plaintiff's employment."[80] Defendants failed to respond to Plaintiff's argument and have failed to carry their burden to "designate 'specific facts showing that there is a genuine issue for trial.'"[81]

The only evidence showing Hassan acted in good faith to comply with the FLSA is that he read a "poster board and stuff like that."[82] Moreover, Hassan allowed his employees to choose whether they would be classified using a 1099 form or a W-2, but the economic reality of the relationship between employer and employee determines one's status as an independent contractor or employee—that inquiry is not governed by

---

[79] *Id.* (quoting *Celotex Corp.,* 477 U.S. at 324).

[80] Doc. 36 at 16–17.

[81] *Celotex Corp.,* 477 U.S. at 324. In their Response, Defendants did not address the issue of liquidated damages and state "[w]ithout conceding that any of Plaintiff's other arguments are valid, Defendants . . . focus . . . on Plaintiff's claim that he worked in excess of forty hours per week." Doc. 41 at 6. "When a party moves for final, not partial, summary judgment, we have stated that 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'" *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001)). A party "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001). Despite Defendants' failure to address the issue of liquidated damages, the Court will address the issue on the merits.

[82] Doc. 41-3 at 40–41; 192–193.

the parties' own labels.[83] Thus, Defendants have failed to make a sufficient factual showing they had reasonable grounds to believe they were in compliance with the FLSA, and as previously discussed, Plaintiff was not exempt from the FLSA. Therefore, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on the availability of liquidated damages, should the jury find a FLSA violation. The amount of liquidated damages, if any, must be determined by the jury.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY GRANTS IN PART** and **DENIES IN PART** the Plaintiff's Motion for Summary Judgment [Doc. 36]. Specifically, the Court **DENIES** summary judgment for Plaintiff on the issue of the number of hours Plaintiff worked while employed by Defendants; and **GRANTS** summary judgment for Plaintiff on the issues of Plaintiff's individual coverage under the FLSA; Plaintiff's status as an employee; Defendant Hassan's individual liability under the FLSA; and Plaintiff's right to liquidated damages, dependent upon the jury's determination of any overtime hours worked.

**SO ORDERED,** this 19th day of March, 2024.

s/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[83] *See Scantlon v. Jeffry Knight, Inc.,* 721 F.3d 1308, 1311; 26 C.F.R. §§ 1.6041-1–1.6041-3 (stating that a Form W-2 is required to be filed for wages paid to employees, while Form 1099 is required to be filed for independent contractors).

17